# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AB TECHNOLOGIES, LLC,<br><br>            Reorganized Debtor.[1] | Chapter 11<br><br>Case No. 23-11132 (TMH) |
| AMRS Creditors Trust,<br><br>            Plaintiff,<br><br>vs.<br><br>Boomi, LP fdba Boomi, Inc.,<br><br>           Defendant. | Adv. No. **Refer to Summons** |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

The AMRS Creditors Trust (the "Plaintiff" or "Trust"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Boomi, LP fdba Boomi, Inc. (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges the following upon information and belief:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of

---

[1] On December 13, 2024, the Court entered the Order and Final Decree Closing Chapter 11 Cases [Case No. 23-11131, Docket No. 1766], closing each of the Reorganized Debtors' chapter 11 cases except that of AB Technologies LLC. The Court ordered that the closures "shall have no effect whatsoever on the Creditor Trust's rights to prosecute all Causes of Action of the Debtors and the Estates against the Excluded Parties and the Specified Preference Actions…"

1

Amyris Inc. and certain affiliated debtors (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code").

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of Plaintiff's rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The underlying bankruptcy case is captioned *In re: AB Technologies LLC*, Case No. 23-11132 (TMH).

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

6. The statutory and legal predicates for the relief sought herein are sections 502, 547, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that Plaintiff does consent to the entry of final orders or judgments by the Court if it is determined that the Court,

---

[2] As noted above, only the case of Debtors AB Technologies LLC remains open. A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Amyris

absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On August 9 and 21, 2023 (collectively, the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. On August 11, 2023 and August 23, 2023, the Court entered orders authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [Case No. 23-11131, D.I. 50 and 125].[3]

9. On February 7, 2024, the Court entered an order (the "Confirmation Order") [Case No. 23-11131, D.I. 1251] confirming the *Third Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors* [Case No. 23-11131, D.I. 1200] (the "Plan"), with all supplements and exhibits thereto, as it has been and may be amended, altered, modified, revised, or supplemented from time to time, including the Creditor Trust Agreement (the "Trust Agreement") [Case No. 23-11131, D.I. 1453, Ex. A].[4]

10. The effective date of the Plan (the "Effective Date") occurred on May 7, 2004. [Case No. 23-11131, D.I. 1454]. In accordance with the Plan and Confirmation Order, the Trust was established as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Trust Agreement.

11. Pursuant to paragraph 129 of the Confirmation Order and Section 5.A of the Plan, all Creditor Trust Assets (as defined in the Plan), including Specified Preference Actions under Chapter 5 of the Bankruptcy Code, were transferred to the Trust.

---

[3] The Debtors' cases were originally jointly administered under Amyris Inc., Case. No. 23-11132.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Trust Agreement.

## THE PARTIES

12.    Pursuant to the Plan, Confirmation Order, and Trust Agreement, Plaintiff has the capacity, in its own right and name, to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve the Specified Preference Actions, including this avoidance action.

13.    Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that was a software company to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 1 W. Elm Street, Conshohocken, Pennsylvania 19428. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited partnership residing in and subject to the laws of the State of Delaware.

## FACTUAL BACKGROUND

14.    As more fully discussed in the *Disclosure Statement With Respect to Second Amended Joint Chapter 11 Plan of Reorganization of Amyris, Inc. and Its Affiliated Debtors, As Modified* (the "<u>Disclosure Statement</u>") [Case. No. 23-11131, D.I. 893], the Debtors were a manufacturer of eco-friendly alternatives for flavors and fragrances, sweeteners, cosmetics, pharmaceuticals, and other consumer products. In addition to the company's development and manufacturing of rare molecules (or "ingredients"), the company launched a family of clean beauty brands and sold beauty products both through direct-to-consumer e-commerce platforms and through a network of retail partners including Sephora, Target, and Walmart, both in the United States and abroad.

15.    Prior to the Petition Date, the Debtors, as a company engaged in the manufacturing and sale of ingredients and clean beauty products, maintained business relationships with various

4

business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

16. The Debtors' financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in Sections 2.C through 2.E of the Disclosure Statement and are incorporated herein by reference.

17. As described in section 3.A of the Plan and Section 3.A of the Disclosure Statement, General Unsecured Claims compromise an impaired class of creditors and are not expected to be paid in full.

18. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, transfer, and disbursement of funds in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of twenty-four bank accounts (the "Bank Accounts") held at JPMorgan Chase Bank, N.A. ("JPMorgan"), U.S. Bank, Union Bank, and Bank of the West.

19. Among these Bank Accounts, disbursements to vendors and for payroll were made from accounts ending 2799, 2898, 3839, 3987, and 9050 held at J.P. Morgan, account ending 2314 at U.S. Bank, and account ending 1231 at Union Bank (collectively, the "Disbursement Accounts").

---

[5] *See Motion for Entry of Interim and Final Orders Authorizing Debtors To (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* (the "Cash Management Motion"), incorporated herein by reference [Case No. 23-11131, D.I. 16].

20. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including Defendant.

21. During the ninety (90) days before the Petition Date, that is (i) between May 11, 2023 and August 9, 2023, or (ii) between May 23, 2023 and August 21, 2023 (the "Preference Period"),[6] the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

22. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than the amount set forth on Exhibit A hereto (the "Transfer" or "Transfers").

---

[6] Debtors Amyris, Inc.; AB Technologies LLC; Amyris Clean Beauty, Inc.; Amyris Fuels, LLC; Amyris-Olika, LLC; Aprinnova, LLC; Onda Beauty Inc; and Upland1 LLC filed on August 8, 2023. Debtors Clean Beauty Collaborative, Inc.; Clean Beauty 4U Holdings, LLC; and Clean Beauty 4U LLC filed on August 21, 2023. The exhibit(s) attached to this Complaint and described *infra* will list the transferring Debtor for each transfer alleged to have been made to Defendant, along with the Preference Period for that Debtor.

The details of each Transfer are set forth on <u>Exhibit A</u> and incorporated by reference. Such details include "Transfer Number," "Transfer Amount," "Clear Date," and "Debtor Transferor(s)."

24. Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

25. On or about December 24, 2024, Plaintiff, through counsel, sent one or more demand letters (collectively, the "<u>Demand Letter</u>") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the Bankruptcy Code and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.

26. Plaintiff also performed Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has $   .00 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this new value is subject to adjustment. Additionally, section 547(c)(4)(B) provides that any potential new value must not be paid for by "an otherwise unavoidable transfer." To the extent that i) there are any prepayments in the Preference Period paying such new value that are not subject to avoidance by Plaintiff, or ii) Defendant successfully asserts affirmative defenses, including but not limited to the ordinary course of business defense or the contemporaneous exchange for new value defense, certain invoices may no longer be available for new value and the new value amount may be subject to

7

reduction.

27. Additionally, Plaintiff reviewed the books and records in Plaintiff's possession to examine whether historical payment records exist that may be used to analyze whether, and to what extent, Defendant may be able to assert the subjective ordinary course of business affirmative defense. However, the subjective ordinary course of business defense is an inherently factual endeavor, and payment history is only one factor. The presence of collection pressure, tightening of credit terms, a creditor's loss of credit insurance, and threats to stop shipments without payment, can make even statistically ordinary payments unordinary. Certain information related to these factors may only be in Defendant's possession, which Plaintiff is entitled request during discovery. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense.

28. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

29. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "<u>Amendments</u>"),

that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

30. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

31. As more particularly described on <u>Exhibit A</u> attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on <u>Exhibit A</u> made Transfers to or for the benefit of Defendant in an aggregate amount not less than $325,154.40.

32. Each Transfer was made from the Disbursement Account(s) described *supra,* and constituted transfers of an interest in property of the Debtor(s) identified on <u>Exhibit A</u>.

33. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on <u>Exhibit A</u> the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on <u>Exhibit A</u> hereto, for which the Debtor(s) identified on <u>Exhibit A</u> were obligated to pay following delivery in accordance with the Agreements.

34. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on <u>Exhibit A</u> to Defendant.

35. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on <u>Exhibit A</u> to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on <u>Exhibit A</u> hereto.

36. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

37. Each Transfer was made during the Preference Period, as set forth on <u>Exhibit A</u>.

38. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

39. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

40. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

41. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code (the "<u>Avoidable Transfers</u>").

42. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

43. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT III
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

44. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Third Claim for Relief.

45. Defendant is a transferee of transfers avoidable under sections 547 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

46. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

47. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

48. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First and Second Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return

to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b) and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

      B.      On Plaintiff's Third Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

      C.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: August 7, 2025

**Bielli & Klauder, LLC**

/s/ *David M. Klauder*
David M. Klauder, Esq. (DE Bar No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

*-and-*

**ASK LLP**

By: /s/ *Joseph L. Steinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Anastasia Kazmina, Esq., MN SBN 0398419
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: 651-289-3854
Fax: (651) 406-9676
Email: akazmina@askllp.com

*-and-*

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Fl.
New York, NY  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Defendant: | **Boomi, LP fdba Boomi, Inc.** | | | | | | |
| Bankruptcy Case: | **Amyris, Inc., et al.** | | | | | | |
| Preference Period: | **May 11, 2023 - Aug 9, 2023** | | | | | | |

## Transfers During Preference Period

| Debtor Transferor(s) | Debtor(s) Incurring Antecedent Debt | Transfer Number | Transfer Amount | Clear Date | Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|---|---|---|---|---|
| Amyris Clean Beauty, Inc. | Amyris Clean Beauty, Inc. | ACH15074711 | $125,154.40 | 6/16/2023 | US27365_1 | 4/27/2023 | $125,154.40 |
| Amyris Clean Beauty, Inc. | Amyris Clean Beauty, Inc. | 43978750 via ACH | $200,000.00 | 7/6/2023 | US27365_2 | 4/27/2023 | $200,000.00 |
| Totals: | | 2 transfer(s), | $325,154.40 | | | | |

Boomi, LP fdba Boomi, Inc. (2292570)
Bankruptcy Case: Amyris, Inc., et al.
Aug 6, 2025

Exhibit A

P. 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>AB TECHNOLOGIES, LLC,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No.: 23-11132 (TMH) |
| AMRS Creditors Trust,<br><br>Plaintiff,<br><br>vs.<br><br>Boomi, LP fdba Boomi, Inc.,<br><br>Defendant(s). | Adv. No. **Refer to Summons** |

**NOTICE OF DISPUTE RESOLUTION ALTERNATIVES**

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The use of these services are often productive and effective in settling disputes. The purpose of this Notice is to furnish general information about ADR.

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral."

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated: August 7, 2025                                         */s/ Stephen L. Grant, Sr.*
                                                                                  *Clerk of Court*

1